In the circuit court of Coahoma county, Percy Washington, the appellant, and Henry Taylor were jointly indicted for the murder of Lynn Coleman. On arraignment of the two defendants, the court granted a severance, and Henry Taylor was tried and convicted of murder and was sentenced to the penitentiary for life. Afterwards, and at the same term of court, the appellant was tried and was likewise convicted and sentenced to life imprisonment in the state penitentiary; and, from this conviction and sentence, he prosecuted this appeal. *Page 407 
The material facts shown in this record are substantially, as follows: About four-thirty o'clock in the afternoon, Lynn Coleman, Henry Taylor, and two other negroes left Jonestown in a Ford automobile, belonging to Coleman, and proceeded to the home of Frank Wyman about three and one half miles away. Somewhere along the road they met up with the appellant, who lived a short distance from Wyman's, and he got into the automobile and went with them to Wyman's home. Upon arriving there, a friendly argument arose as to the skill of one Claud Bumpus as a marksman, and, in order to decide a small wager that was made by the appellant and Bumpus, Wyman's single-barrel shotgun was procured and fired one time. The appellant lost and paid his bet, and also paid Wyman for the shell; then Henry Taylor repaid the appellant the fifty-five cents he had lost as a result of this shooting contest. Wyman testified that he then took the gun, and, without having extricated the empty shell therefrom, placed it behind a trunk in one of the rooms of the house. He further testified that the only other shells in the house were in a trunk.
After the shooting contest, all the parties went into the house and engaged in a game of craps or dice which continued until about dark, when Henry Taylor announced that he was broke, and left the room. In a short while the said Taylor appeared at the door of the room with Wyman's shotgun, and pointed it at the crowd who were engaged in the game, and, with an oath, demanded that they give up his money. Thereupon the appellant discovered a convenient window and immediately disappeared through the same, while the witness, Claud Bumpus, followed suit. Henry Taylor, without making any further effort to recover the money he lost, left the house carrying the gun with him. Wyman protested against his taking the gun away, but he disappeared *Page 408 
along a settlement road which leads from Wyman's home to a graveled highway about three or four hundred yards away.
Frank Wyman's wife and Willie Bumpus testified that about dark of that evening they were traveling along this graveled highway going toward the Wyman home, and that, about the time they reached the intersection of this highway and the road leading to the home of Wyman, Henry Taylor passed them going in the opposite direction; that just after passing them, Taylor met the appellant who was traveling in the same direction as the two witnesses; that Taylor turned and followed the appellant; that they passed these witnesses, Taylor being a few feet behind the appellant; that both Taylor and the appellant had guns, and, as they were passing them on the road, Taylor said, "Let's go down there and get our money, or kill those ____"; that appellant did not reply to this statement or give any indication that he heard it, but both of them proceeded down the settlement road toward the home of Wyman; and that about that time these witnesses heard the motor of the automobile start at Wyman's home, and also saw the lights of said automobile turned on, and shortly thereafter they heard two gunshots.
The testimony of the two witnesses, who were in the automobile at the time the shots were fired, was that, several minutes after Henry Taylor left Wyman's home with the shotgun, they, with Lynn Coleman as the driver, started in their automobile toward the graveled highway; that when they had proceeded a short distance they met Henry Taylor walking toward Wyman's home; that Taylor had a gun and stepped to the side of the road to permit the car to pass; that, just after the car passed Taylor, two shots were fired and the car ran a short distance and headed into a ditch and stopped. It was then discovered that Lynn Coleman had been killed, having *Page 409 
been shot in the back of the head with what appeared to be a 38-caliber bullet. There was also a hole through the rear fender of the car, which appeared to have been made by a similar bullet. The appellant was arrested a few hours later at the home of a relative who lived a short distance from the home of Wyman.
At the conclusion of the testimony for the state, the appellant made a motion to exclude the evidence and direct verdict in his favor. This motion was overruled, and, the appellant having offered no evidence, the cause was submitted to the jury under instructions which authorized a conviction of murder if the jury believed from the evidence beyond a reasonable doubt that appellant willfully, feloniously, and of his malice aforethought killed the deceased, or aided, assisted, or abetted Henry Taylor in murdering him.
The appellant assigns as error the refusal of the court to peremptorily instruct the jury to return a verdict of not guilty, and, in support of this assignment, contends that the evidence was wholly insufficient to support a verdict of guilty upon the theory either that the appellant killed the deceased himself, or that he aided, assisted, encouraged, or abetted his codefendant, Henry Taylor, in murdering the deceased; and we have set forth somewhat at length the facts bearing upon these issues for the reason that we think a mere statement of the facts, as shown by the evidence, will make manifest the insufficiency thereof to support the verdict.
There is no direct testimony to show that the appellant was at the scene of the shooting, and the only circumstances tending to show that he was at or near the scene is the fact that a few minutes before the shooting he was seen walking along the road in that direction. There is nothing to show that the appellant had any animosity or ill will toward any one in the automobile. Only a short time before he had been engaged in a friendly *Page 410 
game with them, from which he had precipitately fled upon being confronted with a gun in the hands of Henry Taylor, who was threatening to kill him and his companions if the money he had lost in the game was not surrendered. He was near his home and traveling along the road leading in the direction of a relative when he met Taylor, who was still giving expression to a desire or purpose to kill or to recover his money. The evidence and the reasonable inferences to be drawn therefrom tend to establish the fact that the meeting between the appellant and Taylor on the public road was purely accidental. It is the merest speculation as to what the appellant did after he was seen something like three hundred yards from the scene of the shooting. There is no evidence whatever of any conspiracy or concert of action between these parties prior to the time they met on the public road, and conceding that the remark made by Henry Taylor at that time, which apparently was addressed to the appellant, was admissible, there is nothing in the evidence to indicate that the appellant assented to the proposition made by Taylor, or that he did anything to aid, abet, or encourage Taylor in carrying out his announced purpose and design. The evidence upon which the conviction rests is largely circumstantial, and we do not think it is sufficient to support a finding that the appellant fired the fatal shot, or that he aided, assisted, abetted, or encouraged another to kill the deceased; and, therefore, the judgment of the court below will be reversed, and the appellant discharged.
Reversed, and appellant discharged. *Page 411