266 So.2d 21 (1972)
Jimmy Dale REID
v.
STATE of Mississippi.
No. 46789.
Supreme Court of Mississippi.
June 26, 1972.
Rehearing Denied September 12, 1972.
*23 Ney M. Gore, Jr., Marks, Walter E. Dreaden, Jr., Lambert, for appellant.
A.F. Summer, Atty. Gen., by J.B. Garretty, Special Asst. Atty. Gen., Jackson, for appellee.
*22 INZER, Justice:
Appellant Jimmy Dale Reid was jointly indicted with William A. Roberson and Larry Reid in the Circuit Court of Quitman County for the crime of the murder of Otis Bailey, Jr. A severance was granted and appellant was tried separately. The jury found him guilty of manslaughter and he was sentenced to serve a term of ten years in the State Penitentiary. From this conviction and sentence he appeals. We affirm.
The essential facts in this case from which the jury found appellant guilty are that on Friday, September 11, 1970, appellant along with William A. "Butch" Roberson, Larry Reid, Walker Sanders, and many others were at a place known as "Jenkins' Place," north of Sledge in Quitman County. Apparently Jenkins' Place is what is commonly referred to as a "beer joint". About 2 A.M. a fight occurred in which several people were involved, including appellant. Jenkins' brother-in-law came in and fired a shot from a shotgun. Appellant, Butch Roberson and Sanders got in appellant's car and left the place. A short distance down the road they picked up Larry Reid who had left on foot. They went to Roberson's house where Roberson obtained his.22 caliber pistol. They left there and stopped near the Ford tractor place where Ed Green had a flat tire on his car. Because Sanders refused to go back to Jenkins' Place for the purpose of "shooting it up", he and appellant had an argument which resulted in a fight. Larry Reid obtained Green's .38 caliber pistol and they left, stopping at the store of appellant's father where they drank some beer. Ed Green testified that he tried to keep appellant and the others from going back to Jenkins' Place. Appellant, Butch Roberson and Larry Reid then drove past Jenkins' Place, with appellant driving and Larry Reid on the front seat next to him. Butch Roberson was in the back seat and as they drove past the place, Larry Reid and Butch Roberson fired several shots. Ollie Eckles and Otis Bailey were standing outside the building. Bailey was struck by one of the bullets and died as a result of this wound. The bullet which struck Bailey was recovered by a pathologist and identified as a .22 caliber bullet. A witness from the crime laboratory could not identify the bullet as having been fired from Roberson's .22 caliber pistol, but did testify that the bullets taken from the building and the bullet taken from the body of Bailey were made by the same manufacturer. The state introduced in evidence, over the objection of appellant, a written statement made by appellant wherein he admitted the essential facts stated above.
The controlling question in this case is whether the trial court was in error in admitting this confession in evidence. Appellant contends this confession was involuntary for the following reasons:
1. The entire series of events on the day on which the alleged confession was obtained amounted to coercion;
2. The alleged confession was obtained through inducements offered to or hope of leniency created in the appellant by statements made to him by Officers Gatewood and Weems and by a co-indictee, William A. Roberson;
3. The fact that the appellant was neither given nor offered a preliminary hearing rendered the alleged confession involuntary and inadmissible;
4. The failure on the part of the state during the preliminary hearing on the admissibility of the appellant's alleged confession to offer the testimony of Deputy Sheriff Jack Harrison, Patrolman *24 Sewell and County Attorney Larry O. Lewis, all of whom were present at least at certain times during the taking of such alleged confession, or to explain its failure to offer such witnesses, rendered the alleged confession involuntary and inadmissible.
It appears from the evidence that on Wednesday following the death of Bailey, appellant and his brother Larry Reid were questioned by the sheriff relative to the events of the night of the shooting. Both were fully warned of their Miranda rights before being questioned and signed a waiver. Appellant made a statement denying that he returned to Jenkins' Place that night. On the next day appellant and his brother voluntarily went to Jackson with A.D. Gatewood, an investigator with the Mississippi State Highway Patrol, for the purpose of taking a polygraph test. On the way to Jackson they picked up Jon Barnwell, a law student assigned as an intern to the office of the District Attorney in that district. After they reached Jackson, appellant signed a statement that he was voluntarily submitting to the polygraph test, but while it was being administered by Mr. Dewey Weems, it was discovered that appellant had been taking medication which probably would affect the test, so the test was not completed.
The parties were preparing to return to Marks when Gatewood received a telephone call from Sheriff Harrison informing him that Butch Roberson had walked into his office and confessed, and that his confession implicated appellant and his brother. Gatewood then took appellant and his brother back to Mr. Weems' office. Jon Barnwell was also there. Appellant contends that at this time Gatewood and Weems made statements promising him leniency, if he would confess. Appellant refused to make a statement at that time. The parties then returned to Marks. Appellant, after talking with Butch Roberson and again being advised of his rights, made the statement introduced in evidence.
Appellant argues that the entire series of events on the day the confession was made amounted to coercion. Appellant bases this assertion on the fact that he was in custody from about 6:30 A.M. until 4:30 P.M. when his statement was made to the officers. Appellant admits that he voluntarily went to Jackson and that during the trip in the patrol car he was not subjected to any questions. He testified that he felt free to refuse to go with Gatewood and that he was free to leave at any time before the call from the sheriff. He contends they told him it would be better for him if he confessed, but he does not contend he was subjected to any prolonged questioning. He admits that on the return trip to Marks, Gatewood did not attempt to question him in any way. While in Jackson he was fed, and when he arrived back in Marks he was allowed to talk to Roberson. It was only after he talked with Roberson that he ever made any statement admitting any part in the affray which resulted in the death of Bailey. After talking with Roberson, he was again fully advised of his Miranda rights and then made the statement introduced into evidence. Under these circumstances we are unable to see how he was in any way coerced into making the confession. The trial court correctly held that the confession was not a result of coercion.
Appellant urges that the trial court was in error in failing to hold that the confession was the result of an offer of leniency which induced him to make the confession. Appellant contends that this offer of leniency was made by Gatewood and Weems in Jackson. Appellant and his brother testified that after Gatewood received word from Sheriff Harrison that Roberson had confessed, he, Gatewood, informed appellant and his brother that Roberson had confessed and implicated them. Gatewood asked him if he did not want to give a statement. They told Gatewood they did not. Appellant then stated that Weems told him that Mr. Gatewood knew *25 what he was talking about and that Mr. Gatewood could help them and would help them if they told him the truth. He said that Gatewood asked them several times if they did not want to give a statement, and Mr. Weems told them that if he had to get up in court and testify that they denied knowing anything about the shooting after knowing about the telephone call, it would hurt them in court. Appellant testified that he relied on the statements and that they induced him to confess when he got back to Marks later that day.
Larry Reid testified to substantially the same facts, except he said Mr. Weems told them:
"Boys, here's a man here that can help you and will help you if you tell him the truth, but if you don't tell him the truth, there's no way he can help you," and about this time Mr. Gatewood got in the conversation again and asked if we have anything we wanted to tell him about what had happened.
Jon Barnwell was present and he testified as follows:
A. I will say the only impression that I could get from the statement, at looking back on what was said, that it would be good if everyone  in other words, everyone in the  involved in it would clear up the inconsistencies in the statements, and I believe he touched on the fact that there were inconsistencies in the two statements. I don't believe and I cannot testify to the fact that whether he actually said it would be better off for them in particular, I cannot say that. I don't believe that's the way it was; it was more like, "We should clear this matter up now; it should be cleared up."
Q. But, Mr. Weems did say it would be better for them 
A.  well, he did say it would be better; I presume he said better; I don't remember the exact words, but it was to that effect, and he probably did use the word better.
Gatewood testified that after he learned of Roberson's confession, he advised appellant and his brother of the fact that it looked like they were going to be involved. He asked them if they wanted to make a statement at this time. They told him that they did not want to make any statement until they talked to Butch Roberson. He denied he made any promise to them at any time that it would be to their advantage or better for them if they made a statement and further denied that he made any promise of leniency.
Mr. Weems testified and he denied that he told them that Mr. Gatewood could or would help them if they would tell him the truth. He also denied that he said it would be better for them if they cleared up their part of it in the matter.
Appellant made no stateemnt at that time, and it was only after he talked with Butch Roberson, and again had been fully advised of his Miranda rights, that he admitted his part in the affair. Appellant testified that Butch Roberson told them what he had confessed to the officers. He also testified that Butch told them that they (the officers) had told him that it would be better for them to go ahead and tell the truth. Appellant admitted that he was aware of the fact that he did not have to make the statement, but he thought it would be better to do so, since Butch had said it would be better for them. Appellant does not contend that the officers in Marks made him any promises, threatened him or in any way coerced him into making the statement which was reduced to writing after he had talked with Butch Roberson. We are of the opinion that under these circumstances the trial court was justified in finding from conflicting evidence that the confession was free and voluntary and was not the result of any promises of leniency. Jones v. State, 209 Miss. 896, 48 So.2d 591 (1950); Street v. State, 200 Miss. 226, 26 So.2d 678 (1946).
We find no merit in appellant's contention that the confession was not admissible *26 because the state failed to give or offer him a preliminary hearing. Appellant was not charged with any crime prior to the time he made his confession. The confession was given on Thursday, September 17, and appellant was indicted by the Grand Jury on Monday, September 21. This case does not involve a situation where a confession was obtained after incarceration for several days without a preliminary hearing. It is only when a confession is obtained as a result of unreasonable delay in taking the prisoner before a magistrate for a preliminary hearing that his confession of guilt is to be excluded on this basis. Gordon v. State, 160 So.2d 73 (Miss. 1964); Parker v. State, 244 Miss. 332, 141 So.2d 546 (1962).
Finally, appellant contends that the confession was not admissible because the state failed to offer all persons who were present when the confession was taken. He relies on the rule that when the accused offers testimony that offers of reward, promises of leniency, or force induced the confession, then the state must offer all officers who were present when the accused was questioned and the confession signed or give adequate reasons for their absence. Appellant correctly submits that the state did not offer two witnesses who were present during a part of the time when the confession was taken in Marks. However, appellant does not contend that the officers at Marks made him any promise of leniency or used any force, violence, or threats. The alleged promise of leniency was made at patrol headquarters at Jackson, and the state offered all officers who were present at that time. Appellant does not contend that the officers, who were not offered, were present when any promise of leniency was made. Only when the accused offers testimony that violence, threats of violence, or offers of reward induced the confession must the state offer all the officers who were present during the interrogation when the violence, threats of violence, or offers of reward were made. Agee v. State, 185 So.2d 671 (Miss. 1966). It was not necessary for the state to offer all the officers who were present at that time, since appellant freely admits that he had been fully warned of his Miranda rights before he made the statement which was reduced to writing, that he understood these rights, and that no one present during this interrogation made him any promises or held out any hope for reward. It is not contended that the officers who were not offered could throw any light upon what happened in Jackson several hours before the confession was made. The state is not responsible for any statements made to appellant by Roberson which might have induced appellant to make a statement. Roberson was a co-indictee, and if appellant chose to rely on statements made to him by his co-indictee, he did so at his own peril.
The trial judge, after a full hearing out of the presence of the jury, was convinced beyond a reasonable doubt that appellant's confession was freely and voluntarily made, and our review of the record convinces us that he was fully justified in so holding. We hold that the trial court was correct in holding that the confession was admissible.
Appellant urges that the trial court was in error in allowing the state over his objection to show events culminating in the shooting, which included evidence relative to the fights in which appellant was involved. It is a general rule that in criminal prosecutions evidence which shows or tends to show that the accused is guilty of other offenses at other times is not admissible, unless the other offenses are reasonably connected with that for which he is on trial. There are, however, a number of exceptions to this general rule. Included in those exceptions is evidence which shows the purpose or motive for the crime charged. The events which happened at Jenkins' Place showed appellant's motive for returning to Jenkins' Place and committing the crime charged. The events at the Ford tractor place revealed appellant's immediate preparation *27 and determination to return and "shoot up" Jenkins' Place. We are of the opinion that the trial judge did not abuse his discretion in holding that this evidence was relevant and not too remote. Brooks v. State, 242 So.2d 865 (Miss. 1971).
The only other error assigned which merits any discussion is the contention that the trial court was in error in overruling appellant's motion for a new trial because of improper remarks made during the voir dire examination by the district attorney and the trial judge. Roberson had been tried the week before this trial was had and was convicted of manslaughter. His conviction has since been affirmed by this Court. Roberson v. State, 257 So.2d 505 (Miss. 1972). During the course of the selection of the jury to try this case and at a time when eleven jurors had been selected, the following occurred while the district attorney was questioning a prospective juror:
District Attorney: Now, I want to point out to you that there was a trial last week in which one of the co-defendants was put to trial; do you know the outcome of that trial?
Juror: I heard that he had a sentence for imprisonment.
District Attorney: All right, you have heard something about the outcome?
Juror: Yes, sir.
District Attorney: Now, the Court will instruct you that the outcome of that trial does not have anything to do with the outcome of this trial, and I would like to know this. Can you completely lay aside, insofar as considering this case is concerned, what you know to be the outcome of the other trial, and try this case purely on its merits. You will not  the fact that the co-defendant has been sentenced to a term in the State Penitentiary will not affect you 
Appellant's Attorney:  now, if the Court please, I think that is highly prejudicial 
Court:  I think that is improper  sustain the objection.
Appellant's Attorney: I move that the Court declare a mistrial.
Court: Motion overruled. The jury will disregard the statement about the outcome of the last case tried, and completely disregard that last remark 
District Attorney:  may I say this, that is with complete apologies to Court and counsel for the defendant, if that's wrong, but I thought we had pretty well plowed that field.
Court: I have ruled; I don't care to hear anything further about that; I don't want to go into that; and I don't want the jury to hear any more about it. That must be completely erased from the jurys' minds, and I so instruct the jury.
District Attorney: Can you completely disregard what you've heard about the other case and try this case on the facts as you hear them, and it will not affect you adversely to the defendant or in favor of the defendant, will you do that?
Juror: Yes, sir.
District Attorney: Do you know of any reason why you can't listen to this case and analyze the facts and try it fairly and impartially?
(Juror indicates a negative response)
District Attorney: That's all.
Court: Ladies and gentlemen of the jury, in order to clarify this situation, I want to state this, that this case against Jimmy Dale Reid is a completely new ball game. What happened in the previous case has absolutely nothing to do with this case today. You try it solely on the law and evidence as presented to you here during this trial, that and that alone. Don't let anything that you may have heard previously influence your decision in this case one way or the other. I want that clearly understood.
*28 Under the circumstances of this case we are of the opinion the trial court was not in error in overruling appellant's motion for mistrial. Appellant's confession together with the other evidence clearly established appellant's guilt. However, appellant argued that although the trial court promptly sustained appellant's objection, admonished the jury to disregard anything about another trial, and to try the case solely on the law and evidence presented, in this trial the jury could not disregard and remove from their minds the fact that a co-indictee had been convicted by another jury. Appellant cites in support of this argument Pieper v. State, 242 Miss. 49, 134 So.2d 157 (1961), and Pickens v. State, 129 Miss. 191, 91 So. 906 (1922). In both cases, evidence was admitted as to the guilt of the co-indictee. This is not the situation here. The trial judge promptly instructed the jury to disregard any statement relative to the trial of anyone else and did everything in his power to erase from the minds of the jury the remarks of the district attorney. Furthermore, appellant requested and was granted the following instruction which in pertinent part is as follows:
The Court instructs the jury for the defendant that in arriving at a verdict in this case, the jury shall not only disregard the verdict of a former jury and the disposition made by the Court at an earlier trial in the Case of the State of Mississippi against William A. (Butch) Roberson, which case is a companion case to this case, William A. (Butch) Roberson having been tried under the same indictment as that returned against the defendant Jimmie Dale Reid; but this jury shall give absolutely no thought to the verdict of the former jury and the action of the Court in the prosecution of William A. (Butch) Roberson; and in arriving at its verdict in this case this jury shall consider only that evidence or lack of evidence produced in open Court by the state against Jimmie Dale Reid and the evidence produced in open Court in this case by the defendant Jimmie Dale Reid; ...
In the absence of anything to show the contrary, the presumption is that the jury in reaching its verdict followed the court's instructions. With appellant's confession in evidence, we are unable to see how a fair-minded jury could reach any verdict other than the one which the jury reached in this case.
We have carefully considered the other errors assigned and find them to be either without merit or harmless error. Mississippi Supreme Court Rule 11.
For the reasons stated, this case should be and it is affirmed.
Affirmed.
GILLESPIE, C.J., and JONES, BRADY and ROBERTSON, JJ., concur.